Reese, J.
delivered the opinion of the court.
The complainant, Elizabeth, was the widow and relict of Peter Burton, and she, having dissented from his last will and testament, filed this bill against his devisees for an assignment of dower, and an account of the annual value or profits thereof from the death of the said Peter, and for a distributive share of his pei’sonal estate. It appears from the bill and cross bill, the answers to both, and from the proofs, that in the month of June, 1830, Peter Burton, then of an advanced age, a widower, and the father of several adult children, intermarried with the complainant, Elizabeth, then a widow of an age also somewhat advanced, and the mother of several adult children by a former marriage. At various periods prior to the intermarriage of Peter Burton and the complainant, Elizabeth, the former, commencing as early as 1812, had made reasonable advancements in real and personal estate to his children upon their marriage; and in 1829, in the lifetime of his former wife, he had settled some of' his younger children, about that time married, upon small tracts of land given to them by parol, but not conveyed till a few months after his last marriage. He then resided in the coun- *463 1y of Williamson upon a tract of land containing six hundred and forty acres, which, a few years after his marriage, he sold for upwards of four thousand dollars, and with a portion of the proceeds made further advancements to his children, and with the balance purchased a tract of land in the county of Gibson of two hundred acres, to which, with his wife he removed, taking with him some eleven slaves and also other personal property with about fifteen hundred dollars. It seems to have been his purpose to have enlarged his farm by the purchase of adjoining lands, but shortly after his removal, to wit, in the summer of 1834, he died, having made his last will and testament, and therein devised and bequeathed to complainant, Elizabeth, dower in the tract of land and two negro men slaves and other personal property, for life. Previously to his intermarriage with complainant he and complainant made and signed a contract in writing, the substance of which was that he, by virtue of the marriage, should have no claim whatever upon the estate of the said Elizabeth, nor she upon his estate. This contract was some months after the marriage dissolved by mutual consent.
The principal contest in this case is, whether the complainant, Elizabeth, shall have dower assigned her in the real estate conveyed by Peter Burton to his children by way of advancement subsequently to his intermarriage with complainant. It is insisted that she is entitled to dower in such real estate by operation of the act of 1784, ch. 29, which declares “that any conveyance made fraudulently to children or otherwise with the intention to defeat the widow of the dower thereby attached shall be held and decreed to be void, and such widow shall be entitled to dower in such lands so fraudulently conveyed as if no conveyance had been made.” Without going into a recital of the proof intended to establish a fraudulent purpose in fact on the part of the husband in making the conveyance referred to, or attempting any argument on the effect of such proof, we deem it sufficient to announce as the result of our investigation the conviction fhat a fraudulent purpose in the conveyance is not established by the testimony against the husband. Nor is an actual fraudulent intention much insisted on in argument by the counsel *464 of complainants. But it is said that a proper construction of the proviso referred to will make void as to the widow’s dower a conveyance from father to child subsequent to the marriage, however bona fide, if such conveyance be voluntary and founded upon considerations meritorious only.
We waive at present all inquiry into the effect of the marriage contract, which, as it was destroyed by mutual consent some months after the marriage, was probably destroyed after the conveyances, or at least it is not shown by the complainants to have been destroyed before the conveyances. Such inquiry might preclude the raising of the question above referred to, and which has been chiefly discussed in this case. Authorities upon the very point are wanting; and as advancements in real estate by the father to the children must have been frequently and constantly occurring without the wife joining in the conveyance, which with us she never does except when owner of lands in her own right, the absence of authority upon the point, under such circumstances, would seem to establish that the opinion not of society only but of the profession in general from the time of the statute to this moment has been against the construction contended for. This, however, it must be conceded, is a persuasive only and not a conclusive argument in favor of the contrary construction. The learned and able judge, indeed, who delivered the opinion of the court in the case of Hughes vs. Shaw, Martin and Yerger, 329, makes an animated argument in favor of the construction of the statute contended for by the complainants, at the close of which, however, he adds, “We forbear to give any decision upon this question in this case; it has not been argued, nor is it essential to decide upon it.” The error of that argument, it seems to us, consists chiefly in construing the general provisions of the statute on the subject of dower as if it had been “that the widow shall be endowed of all lands of which the husband was seized during the coverture, provided however that the husband may during coverture alien any of his lands bona fide, and for a valuable consideration, in which case the lands so aliened shall be exempted from the widow’s dower.” If such had been the provision, the widow’s right would in all cases have *465 existed prima facie, and those claiming against her right must have shown the sale to have been fair and for a valuable con-. sideration. But in the actual provision made by the statute the reverse is the case. Her claim prima facie is limited to the land of which her husband died seized and possessed; and if it be extended beyond that, it is upon the ground stated in the proviso, and the case must be made out by her in proof. Besides, the words “fraudulently and with intention to deprive her of dower” seem not at all to apply to a bona fide advancement of real estate to a child, properly made according to the wants of the child and the condition of the father’s property and family. Of this opinion is the supreme court of North Carolina in the case of Littleton vs. Littleton, 1 Dev. and Bat. 330, in which it is said that the act of 1784, as to dower, and that of 1715, as to creditors and purchasers, differ materially in their terms and in their subject matter, and that conveyances may stand against a widow which could not against creditors and purchasers. “Upon the statute of 1784 the conclusion is more obvious that only fraudulent conveyances are avoided, and not voluntary conveyances, as such. The statute, unlike that of 1715, is altogether silent upon the subject of consideration. The intent spoken of is the actual intent to defraud the widow. Bona fide conveyances, that is to say, such as are not intended to defraud the wife, do not seem to be within the meaning more than within the words of the act; such are sales to which a power is allowed the husband; such too appear to be bona fide gifts, whereby the h usband actually and openly divests himself of his property and the enjoyment of it in his lifetime in favor of children and others; thereby making, according to his circumstances and the situation of his family, a just and reasonable present provision for persons having meritorious claims on him, and with that view, and not with the view to defeat nor for the sake of diminishing the wife’s dower. If this had not been the purpose of the legislature, there certainly would, with respect to the advancements to children in particular, have been a specific provision in the statute,' since, in the .same act, the manner in which they shall be regulated as between the children themselves is expressly pointed out.” *466 Such are the views of the supreme court of North Carolina, a court of at least equal authority with our own upon the construction of this statute. With these views we are satisfied, and we adopt them. The decree of the chancellor must therefore be affirmed.